# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 17-8411-GW(PJWx) | Date | October 4, 2018 |
|---|---|---|---|
| Title | *International Designs Corporation, LLC, et al. v. Hair Art Int'l, Inc.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Robert C. Kain, Jr. | Christina M. Wickers |

**PROCEEDINGS:**   **CLAIM CONSTRUCTION HEARING;**

**DEFENDANT'S MOTION TO STRIKE AND EXCLUDE THE OPINIONS AND TESTIMONY OF DR. DAVID STUART BROOKSTEIN SC.D. AND GÜNTER ALEX [130]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. The Court adopts its tentative as FINAL. Motions to exclude are DENIED AS MOOT.

|  | : | 11 |
|---|---|---|
| Initials of Preparer | JG | |

*__International Designs Corp., LLC et al v. Hair Art Int'l, Inc.__*; Case No. CV-17-08411-GW-(PJWx)
Tentative Rulings on: (1) Joint Claim Construction and Prehearing Statement, (2) Plaintiffs' Motion to Exclude Evidence from Claim Construction, and (3) Defendant's Motion to Strike and Exclude Opinions and Testimony for Claim Construction Hearing

## I.  INTRODUCTION

Plaintiffs International Designs Corporation and LLC and Hairtalk GmbH have alleged that Defendant Hair Art International, Inc. ("Hair Art" or "Defendant") infringes U.S. Patent No. 8,434,500 ("the '500 Patent").   Docket No. 1; *see also* Docket No. 41 ("First Amended Complaint").  Defendant, in turn, has raised counterclaims of non-infringement and invalidity of the '500 Patent.  *See* Docket No. 92 (Defendant's First Amended Counterclaims).  Defendant has also brought claims against Günter Alex, the inventor of the '500 Patent, in its First Amended Counterclaim.  *See* Docket No. 92.

The parties submitted an Amended Joint Claim Construction Chart on July 12, 2018 seeking construction of ten claim terms.  *See* Docket No. 105.  On August 17, 2018, the parties filed opening briefs in support of their claim construction positions.  *See* Docket No. 125 (Plaintiffs' Opening Claim Construction Brief); Docket No. 129 (Defendant's Opening Claim Construction Brief).  The parties filed responsive briefs on August 31, 2018.  *See* Docket No. 143 (Plaintiffs' Responsive Claim Construction Brief); Docket No. 144 (Defendant's Responsive Claim Construction Brief).  The parties filed reply briefs on September 10, 2018.  *See* Docket No. 149 (Plaintiffs' Reply Claim Construction Brief); Docket No. 151 (Defendant's Reply Claim Construction Brief).

Defendant has also filed a Motion to Strike and Exclude the Opinions and Testimony of Dr. David Stuart Brookstein and Günter Alex for purposes of claim construction.  *See* Docket No. 130; *see also* Docket Nos. 141, 142 (Opposition), Docket No. 153 (Reply).  Plaintiffs similarly filed a Motion to Exclude Evidence from Claim Construction.  *See* Docket No. 127; *see also* Docket No. 145 (Opposition), Docket No. 150 (Reply).  Alex joins Plaintiffs in all briefing with respect to the currently pending issues.  The references to "Plaintiffs" throughout this Order thus collectively refer to Plaintiffs International Designs Corporation and LLC and Hairtalk GmbH as well as Counter-Defendant Alex.

The Court would construe the disputed terms as set forth herein.  The parties' motions to

exclude opinions, testimony, and/or evidence would be **DENIED AS MOOT**.

## II. <u>BACKGROUND</u>

The '500 Patent issued on May 7, 2013 and is titled "Hair Band."  It generally relates to a "hair band which may be used for supplementing hair."  *See* '500 Patent at 1:1-16.  The hair band "may be part of a device for supplementing hair, which is glued to the existing hair of the bearer, or it may directly be such a complete device in that it is self-adhesive."  *Id.* at 1:16-19.  The '500 Patent states that previous hair band designs were too thick and failed to create the appearance of a "naturally haired human scalp."  *Id.* at 1:58-61; s*ee generally id.* at *"*Background of the Invention."   The '500 Patent purports to solve problems of the previous designs by creating a thin, flat hair band manufactured at "acceptable efforts."  *Id.* at 2:58-61.

Figure 1 illustrates "a plane view of an embodiment of the new hair band" disclosed by the '500 Patent.  '500 Patent at 3:48-50.   The specification describes Figure 1 as depicting a strip-shaped carrier structure **2** which has a direction **3** of main extension.  *Id.* at 5:30-32.  The outer layer of the carrier structure is formed by foil **6**.  *Id.* at 5:40-42.  Several "stitching through points" **7** are distributed over the area of the foil **6**.  *Id.* at 5:42-46.  Hairs **4** are stitched through foil **6** in a main direction **5** which is perpendicular to the direction of main extension **3**.  *Id.* at 5:38-43.  The ends **8** of the hairs **4** (shown with dashed lines) protrude out the backside of foil **6** and are glued to the backside of the foil.  *Id.* at 5:46-48.



Fig. 1

'500 Patent at Figure 1.

Figure 3 shows "a cross-section through a partial area of an embodiment of the new hair band."  '500 Patent at 3:53-56.  Figure 3 shows a single hair **4** stitched through foil **6** at stitching through point **7**.  *Id.* at 5:57-61.  Directly under foil **6** is glue **9** which connects the end of the hair **8** to the back of the foil **6.**  *Id.* at 5:62-65.  The glue **9** is covered by a cover layer **10** in the form of a single layer cover netting **11**.  *Id.* at 5:65-6:1.  A continuous glue strip **12** is adhesive on both

sides and is between the cover layer **10** and removable cover layer **13**.  *Id.* at 6:1-4.



'500 Patent at Figure 3.

## III.  <u>LEGAL STANDARD</u>

Claim construction is an interpretive issue "exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).  It is "a question of law in the way that we treat document construction as a question of law," with subsidiary fact-finding reviewed for clear error pursuant to Fed. R. Civ. P. 52(a)(6).  *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 837-40 (2015).  The claim language itself is the best guide to the meaning of a claim term.  *See Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1382 (Fed. Cir. 2014).  This is because the claims define the scope of the claimed invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  But a "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent."  *Id.* at 1313.  Thus, claims "must be read in view of the specification," which is "always highly relevant to the claim construction analysis."  *Phillips*, 415 F.3d at 1315 (internal quotations omitted).

Although claims are read in light of the specification, limitations from the specification must not be imported into the claims.  *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009).  "[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms."  *Phillips*, 415 F.3d at 1323.

The prosecution history may lack the clarity of the specification, but it is "another established source of intrinsic evidence."  *Vederi*, 744 F.3d at 1382.  "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent."  *Phillips*, 415 F.3d at 1317 (citations omitted).  "Furthermore, like the specification, the

prosecution history was created by the patentee in attempting to explain and obtain the patent." *Id.* "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

Claim construction usually involves resolving disputes about the "ordinary and customary meaning" that the words of the claim would have had "to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (internal quotations and citations omitted). But in some cases, claim terms will not be given their ordinary meaning because the specification defines the term to mean something else. "[A] claim term may be clearly redefined without an explicit statement of redefinition," so long as a person of skill in the art can ascertain the definition by a reading of the patent documents. *Id.* at 1320; *see also Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016).

Where the patent itself does not make clear the meaning of a claim term, courts may look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including the prosecution history and "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (internal quotations omitted). Sometimes, the use of "technical words or phrases not commonly understood" may give rise to a factual dispute, the determination of which will precede the ultimate legal question of the significance of the facts to the construction "in the context of the specific patent claim under review." *Teva*, 135 S. Ct. at 841, 849. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. "In such circumstances, general purpose dictionaries may be helpful." *Id.*

## IV. <u>ANALYSIS</u>

### A. Agreed Claim Construction Terms

The parties have agreed on constructions for the following claim terms:

| Term | Parties' Agreed Claim Construction |
|---|---|
| "at maximum" (Claims 2, 3, 4, 5, 18) | "or less" |

| | |
|---|---|
| "the foil is a matte . . ." (Claims 6, 7, 18) | "the foil is dull and flat, and without a shine" |
| "provided with a removable cover layer at one of its faces is attached to the back side of the carrier structure" (Claim 18) | "the continuous glue strip adhesive layer provided with a removable cover layer" |

The parties' third agreed construction, for the term "provided with a removable cover layer at one of its faces is attached to the back side of the carrier structure," does not make sense when placed in the context of the surrounding claim language and omits some of the concepts included in the claim language itself.  To address this issue but without intending to substantively change the parties' agreed construction, the parties' proposal is modified to be "the continuous glue strip adhesive layer is provided with a removable cover layer at one of its faces that is attached to the back side of the carrier structure."

### B. Claim Construction Disputes

#### 1. Defendant's Waiver Argument

At the outset of its claim construction brief, Defendant argues that "[h]aving chosen *not* to construe the terms ordered by the Court and per Patent Local Rule 4.3(b) of the N.D. of California, Plaintiffs have waived their opportunity to provide constructions."  Docket No. 129 at 3.  Plaintiffs have submitted their claim construction positions and supporting evidence for each of the parties' disputed terms.  Namely, Plaintiffs propose that many of the disputed terms should be understood by their plain and ordinary meanings and Plaintiffs provide a basis for their position as to each of the disputed terms.  Plaintiffs have not subsequently proposed alternative claim constructions for any of the disputed terms.  In other words, Defendant has not demonstrated any coherent basis to find Plaintiffs have waived a claim construction position, at least as far as the evidence or argument that have been raised by the parties in their claim construction papers.  To the extent Defendant would maintain a waiver argument, it is rejected.

#### 2. Disputed Claim Terms

##### a) *"the hairs individually stitched through" (Claims 1, 18)*

5

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| For the larger term that includes the disputed phrase, "wherein the ends of the hairs are individually stitched through the foil forming the outer layer of the carrier structure," Plaintiffs propose: "one or more ends of hairs stitched through the carrier foil at individual stitch-through points" | "each of the majority of the hairs of the hair band singly extends in one side of the foil and out the other side of the foil at a separate stitching through point." |

The term "the hairs are individually stitched through" appears in Claims 1 and 18 of the '500 Patent.  Claim 1 states:

1.      A hair band comprising:
        a strip-shaped carrier structure having an elastic foil forming an outer layer of the carrier structure, and having a direction of main extension; and
        several hairs having ends fixed to the carrier structure, and extending straight through from the carrier structure in a main direction running perpendicular to the direction of main extension of the carrier structure;
        wherein the ends of the hairs are individually stitched through the foil forming the outer layer of the carrier structure, **_the hairs individually stitched through_** in a two-dimensional distribution of stitching through points and are fixed to the carrier structure by a glue-bond to the back side of the foil only, the fixed ends of the hairs, at the back side of the foil, running straight through in the main direction of the hairs from the glue-bond of their ends through the foil to the main direction of the hairs generally perpendicular to the direction of the main extension of the carrier structure.

'500 Patent at Claim 1 (emphasis added).

        The parties dispute whether the term "the hairs are individually stitched through" is limited to allow only one hair to be stitched through each stitch-through point or can more broadly cover embodiments where there are multiple hairs stitched through one stitch-through point.[1]  The parties assert that this is one of their critical claim construction disputes.

        Plaintiffs argue that the term "individually" does not modify the word "hairs" or the

---

[1] Plaintiffs extensively object that the larger claim limitation in which the claim term appears should be construed. Claim terms are always evaluated in the context of the surrounding claim language.  Thus, the larger claim limitation is *ipso facto* considered in the Court's claim construction analysis and Plaintiffs' objection is inconsequential to the analysis.

phrase "ends of the hairs" and instead modifies the phrase "stitching through points."  Docket No. 149 at 1.  In other words, according to Plaintiffs, the claim language can be interpreted as stating, "one or more hairs[ ] are stitched through the carrier at a single stitch-through point."  *Id.* Plaintiffs' argument about the claim language is inconsistent with a common-sense reading of the claim language itself.  The claims refer to hairs "individually stitched" through the foil in a "two-dimensional distribution of stitching through points."  There is no way to read this language to mean that multiple hairs can be stitched through individual stitch through points. Moreover, the claim language already refers to multiple "through points."  To the extent Plaintiffs would argue that "individual" is necessary to show that there are multiple, individual stitch-through points, such an argument would be unpersuasive.  That there are individual stitch through points is clear from the claim language itself, and "individually" in the context of the claims instead must serve a different purpose.

Importantly, Claim 1 focuses on the individual stitching of the hair ends and how that stitching results in a "two-dimensional distribution of stitching through points."  If more than one hair end could be stitched through the same stitching through point, the term "individually" would have no effect in the context of the claim language.  In other words, the word "individually" could be eliminated from the claim language and under Plaintiffs' proposed construction, the claims would have the same meaning.  In general, however, each term in a claim should be given meaning.  *See Merck & Co., Inc. v. Teva Pharms. USA , Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005).  The claim language thus supports Defendant's position.

This understanding is consistent with the disclosure in the specification.  At the outset of the "Detailed Description" section of the '500 Patent, it states, "[i]n the new hair band, the ends of individual hairs are stitched through the elastic foil providing the outer layer of the carrier structure . . . the individual hairs, which are stitched through this foil, emerge out of the foil like natural hairs out of the human scalp."  '500 Patent at 3:60-4:1.  The '500 Patent then goes on to explain an exemplary embodiment where the hairs are individually stitched through the foil.  It further states, for instance, "the hairs may be stitched through the foil in a non-uniform two-dimensional distribution of their stitching through points."  *Id.* at 4:58-50.  In combination with the claim language, this disclosure shows that the focus of the patent specification is on the hairs being individually stitched through the foil.

Plaintiffs argue that because certain portions of the specification do not necessarily

reference "individual" or "single" hairs, the specification should be understood to be referring to embodiments where multiple hairs can go through a single stitch point.  Plaintiffs do not identify disclosure from the patent specification depicting any *embodiments* where multiple hairs or hair ends are stitched through a single stitch through point.[2]  Moreover, Plaintiffs' cited portions of the patent specification are in the Detailed Description of the patented invention where, at the outset, the patent states it refers to individual hairs stitched through stitch points.  Plaintiffs also seem to argue that the specification is simply describing certain embodiments, but that the claim language should not be limited to those embodiments.  However, this argument ignores the plain language of the claims themselves.  Because the claims and specification both focus on the concept of individual hairs being stitched in such a way to create a two-dimensional distribution of stitching through points to create a natural look for the claimed hair band, Plaintiffs' arguments to the contrary are rejected.

To support its position, Defendant also argues that Plaintiffs disavowed claim scope during patent prosecution.  During prosecution of the application that eventually issued as the '500 Patent, the applicant distinguished its claimed invention over a prior art reference that had more than one hair per opening by asserting that it did not teach the claim limitation "wherein the ends of the hairs are individually stitched through the foil."  Docket No. 129 at 10 (citing Docket No. 126-2 at 118-119).  Because the Court has already concluded that the claims and specification support Defendant's proposed construction of this term, this prosecution history excerpt does not necessarily create a disclaimer.  A review of this excerpt is also not particularly enlightening because of other clear differences between the cited prior art reference and the claim language.  At most, the excerpt might provide some basis to show what the patent applicant understood the claim language to mean, but it does not strongly influence the Court's analysis.

Each party submits extrinsic evidence to support its competing positions regarding the meaning of this claim term.  In light of the clear language of the intrinsic record, it is not necessary to consider this competing evidence.

Plaintiffs also urge that Defendant's proposed construction creates ambiguity as to this claim term through its proposed phrase "of the majority of the hairs of the hairband."  In an

---

[2] Plaintiffs heavily emphasize that the claims should not be limited solely based on Figure 3 of the patent specification.  Figures 1 and 2 of the '500 Patent, however, similarly refer to the concept of individual hairs being stitched through individual stitch points.

attempt to avoid ambiguity, and because this aspect of Defendant's proposed construction is not related to this claim term, the Court construes the phrase "the hairs are individually stitched through" as "each hair stitched through an individual stich through point."

      *b)*  *"several hairs" (Claims 1, 18)*

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| no construction necessary | "a majority of the hairs of the hair band" |

For the term "several hairs," Plaintiffs argue that the term needs no construction because a person of ordinary skill in the art ("PHOSITA") would understand the meaning of the term as used in the claims.  Docket No. 125 at 25.  Defendant argues that a PHOSITA would understand "several hairs" to mean "a majority of hairs."  Docket No. 129 at 13.

The term "several hairs" within the context of the claims reads:

> ***several hairs*** having ends fixed to the carrier structure, and extending straight through from the carrier structure in a main direction of main extension of the carrier structure

'500 Patent at Claims 1, 18 (emphasis added).

Although Defendant argues that "several" should be construed as "a majority of the hairs," Defendant admits that "it would be appropriate for the Court to construe 'several hairs' as '*all* of the hairs of the hair band.'"  Docket No. 151 at 4.  Defendant additionally states that "a PHOSTIA would understand the use of 'several hairs **4**' is describing all of the hairs shown in FIG.1, namely, all the hairs of the hair band."  Docket No. 129 at 13-14.  Defendant does not otherwise provide any basis from the intrinsic record for understanding "several" to mean "majority," and the Court has found none.

Plaintiffs appear to agree with Defendant's position that the phrase "several" means "all" of the hairs of the hair band.  Although the phrase "several" could alternatively suggest some other collection of the claimed hairs have some other relationship to the claimed invention, there is no disclosure to support any additional hairs being attached to anything besides the carrier. Even though it is a general rule of claim construction that each word in a claim should be given meaning, both parties effectively acknowledge that in the instance case, the term "several" is essentially superfluous language when it comes to the claimed invention, beyond further

emphasizing that the claimed hair band includes more than one hair.

The term "several hairs" is construed as "multiple hairs."

    c)   *"the hairs . . . are fixed to the carrier structure by a glue bond to the back side of the foil only" (Claims 1, 18)*

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| no construction necessary | "each of the majority of the hairs of the hair band is attached by a glue bond only to the back side of the foil and not to other hairs so as to form only a single layer" |

While Plaintiffs argue that no construction is necessary for the term "the hairs . . . are fixed to the carrier structure by a glue bond to the back side of the foil only," they argue that this limitation does not preclude hairs glued to other hairs so as to form only a single layer.  Docket No. 125 at 20.

The relevant claim language states,

*the hairs* are individually stitched through in a two-dimensional distribution of stitching through points and *are fixed to the carrier structure by a glue-bond to the back side of the foil only.*

'500 Patent at Claims 1 and 18 (emphasis added).

One of Plaintiffs' primary arguments is that the term "only" modifies "back side," not "glue bond."  Docket No. 143 at 15 (*See also* '500 Patent at abstract, 3:4-9, 3:17-21, 5:4-12, 6:24-30).  Plaintiffs thus argue that Defendant's proposed construction is incorrect.

Even if "only" modified "back side," as Plaintiffs contend, the Court fails to see how this interpretation would read on hairs that could be affixed to each other rather than hairs glued to the foil.  The claimed limitation, even without the word "only" states that the hairs are individually stitched and fixed to the carrier structure by a glue-bond.  The Court does not see the logic to Plaintiffs' argument and finds that Plaintiffs have failed to submit a coherent basis as to why this claim language would allow for hairs to be glued to one another rather than requiring that each stitched hair be fixed to the carrier structure by a glue bond to the back side of the foil.

Plaintiffs' objections to Defendant's proposal, however, are not entirely unwarranted.  Defendant's proposed construction unduly imports limitations from the specification.  For

instance, Defendant's proposal would require that the hairs form only a single layer and that the hairs can never be affixed to one another.  As long as each of the hairs is affixed by a glue bond to the back side of the foil, there is no other language in either the claims or the specification that states the hairs may not additionally be affixed to one another.  It is easy to imagine a scenario, for instance, where a glue bond for one hair inadvertently affixes neighboring hairs to the back side of the foil in a second place.  Defendant's position would imply that this scenario should not be covered by the claim language.  The Court finds this position unpersuasive.

After considering the parties' arguments, the Court construes the term "the hairs . . . are fixed to the carrier structure by a glue bond to the back side of the foil only" as "each hair . . . is fixed to the carrier structure by a glue bond to the back side of the foil only."

*d) "straight", "two-dimensional distribution", "through"*

| Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "straight" (Claims 1, 18) | no construction necessary | "extending or moving uniformly in one direction only; without a curve or bend" |
| "two-dimensional distribution" (Claims 1, 10, 18) | no construction necessary | "a planar distribution throughout the area of the foil" |
| "through" (Claims 1, 10, 18) | no construction necessary | "moving in one side and out of the other side of (an opening, channel, or location)" |

For the disputed claim terms "straight," "two-dimensional distribution," and "through," although Defendant proposes constructions for these terms, it argues that the constructions are consistent with the terms' plain and ordinary meanings.  *See, e.g.*, Docket No. 129 at 16 (for the term "straight" the "patent does not deviate from this ordinary meaning or scope"); *see also id.* at 17, 18.  Defendant's proposed constructions are based on definitions from the 2008 *Compact Oxford English Dictionary*.  Docket No. 129-5 at 16 ("straight"); *id.* at 18 ("two-dimensional distribution"); *id.* at 14 ("through").  Plaintiffs similarly agree that these three terms should be afforded their plain and ordinary meaning, but argue that no construction of the terms are necessary because "the PHOSITA understands the meaning of the terms as used in the Claims."

11

Docket No.125 at 25.

The Court agrees that nothing in the intrinsic record indicates that these three terms are being used in a way that is unique from their ordinary meanings.  Defendant has not sufficiently explained what benefit would be provided by using a general dictionary definition to aid the fact-finder as opposed to the terms themselves, which are common terms that are easily understood.

After considering the parties' arguments, the Court finds that no construction is necessary for the terms "straight," "two-dimensional distribution," and "through."

e)  *"anti-hygroscopically sealed" (Claim 8)*

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| no construction necessary | "sealed from moisture" |

Like the three terms just addressed, the parties do not appear to have a real dispute over the meaning of the term "anti-hygroscopically sealed."  Instead, they simply seem to dispute whether a claim construction is necessary or whether the term can be understood on its face.  Plaintiffs argue, for instance, that a PHOSITA would read and understand the term "anti-hygroscopically sealed" in the context of the claims, specification, and drawings.  Docket No. 125 at 25.  Defendant argues, meanwhile that "A PHOSITA, whether or not familiar with the terms 'hygroscopic' and 'anti-hygroscopic', could easily understand the definition of 'hygroscopic' as 'tending to absorb moisture from the air,' as found in a common dictionary."  Docket No. 129 at 20 (citing the 2008 *Compact Oxford English Dictionary,* Docket No. 129-5 at 22).

Plaintiffs do not appear to disagree that Defendant's proposed construction is consistent with the plain and ordinary meaning of the term "anti-hygroscopically sealed," and instead simply object on the grounds that claim construction is not necessary.  Although Plaintiffs argue that a person of skill in the art would understand the term, Plaintiffs do not consider whether a lay juror would understand the term.  "Hygroscopically" is not a common word like "straight" that is likely to be used in common parlance.  Instead, it is a technical term with a scientific meaning.

The specification discloses that "with natural hair there is a danger of the hairs getting loose upon absorbing moisture due to the hygroscopicity of the hairs."  '500 Patent at 2:17-20.

For prior art systems made of natural hair, the patent explains "they are provided with an anti-hygroscopic sealing in the area in which they are glued to the adhesive tape." *Id.* at 1:51-55.  In other words, the '500 Patent refers to the concept of anti-hygroscopically sealing hairs as sealing hairs from moisture through various means.  This use is consistent with Defendant's proffered dictionary definition.  *See Compact Oxford English Dictionary* (2008)*,* Docket No. 129-5 at 22.

Accordingly, the Court construes the term "anti-hygroscopically sealed" as "sealed from moisture."

    *f)  "a hair band" / "the hair band" (Claims 1-18)*

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| no construction necessary | "a head band; an attachment device spanning at least half of a circumference of a human head worn over the top of the head and behind the ears which may be used or be part of a device for supplementing hair" |

The claim term "hair band" appears only in the preamble of the claims.  The preamble is at the beginning of a claim term and usually provides a general description of the claimed invention.  For instance, Claim 1 begins by stating "[a] hair band comprising . . ." '500 Patent at Claim 1; *see also id.* at 18 (same).  Generally, a preamble will only limit the invention "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim."  *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 640 F. App'x 951, 956 (Fed. Cir. 2016) (citing *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)).  "The effect preamble language should be given can be resolved only on review of the entirety of the patent . . . ."  *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989).

Here, each claim begins with the term "a hair band" / "the hair band" in the preamble, and does not use the term again anywhere in the body of the claim.  Instead, the claims refer to components of the hair band.  For instance, the claims describe a "strip-shaped carrier structure" with "an elastic foil forming an outer layer of the carrier structure," "wherein the ends of hairs are individually stitched through the foil," and "the ends of the hairs are fixed by a glue-bond to the back side of the foil."  '500 Patent at Claim 1; *see also, e.g.*, *id.* at Claims 2-5 (describing the dimensions of the various components); *id* at Claims 6-7 (describing the foil material).  Together,

the various limitations in the body of each of the claims describe structurally complete inventions.

Defendant argues that the preamble is limiting "because it gives meaning to the other limitations of the claims."  Docket No. 144 at 15.  Defendant argues "that limitations relating to 'several hairs' and 'a glue-bond to the back side of the foil only' have meaning only in relation to the fact that the claim is for a 'hair band.'"  *Id.*  But Defendant fails to explain what structural aspect is actually provided by the phrase "hair band" that is not already found in the other claim limitations.  For instance, the claims require a structure (carrier structure) with several hairs attached, and explains the way in which those hairs are attached (individually stitched through the foil of the carrier structure and fixed to the back of the foil by a glue bond).  Defendant's argument that the preamble adds additional (undisclosed) structure is unpersuasive

As Plaintiffs observe, while "[a] preamble serves as a convenient label for the invention as a whole – it does not limit the claim scope."  Docket No. 125 at 23 (citing *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003)).  After considering the parties' arguments and the preamble within the entirety of the record, the Court finds that Defendant has failed to show a basis for interpreting the preamble as a claim limitation.

Because the Court does not find the term "hair band" to limit the claim scope, it is not necessary to address Defendant's arguments regarding defining "hair band" as "head band."  Docket No. 129 at 21-22.  No construction is necessary for the term "hair band."

g)  *"stitched" / "stitching" (Claims 1, 10, 18)*

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| no construction necessary | "pushed(ing) hair through with a machine" |

The term "stitched" / "stitching" appears in Claims 1, 10 and 18 of the '500 Patent.  The term is used in the context of the claims as some variation of "hairs are individually *stitched* through the foil."  '500 Patent at Claim 1 (emphasis added); *see also id.* at 18 (same).  Plaintiffs assert that the term should be afforded its plain and ordinary meaning, but argue that no construction of the term is necessary because "the PHOSITA understands the meaning of the terms as used in the Claims."  Docket No.125 at 25.  Defendant, while not disputing that the term is used in the patent consistent with its plain and ordinary meaning, proposes a construction

arguing that a "PHOSTIA would understand that each hair is pushed through with a machine." Docket No. 129 at 23.

Defendant's proposed construction narrows the scope of the claims by construing out the possibility of hand-stitching. Defendant offers no real support for this narrowing position other than a conclusory statement by its expert and a dictionary definition. Docket No. 129-4 at ¶ 69. And Defendant's cited dictionary definition does not even support Defendant's proposed construction. Docket No. 105-2 at 69 (citing the definition of "stitched" from the 2008 *Compact Oxford English Dictionary* as "[a] loop of thread or yarn resulting from a single pass or movement of the needle in sewing, knitting, or crocheting."). Nothing in this definition or anything else cited by Defendant suggests that stitching must be performed by a machine.

Indeed, the intrinsic evidence supports a broader construction. Stitching performed by a machine is only recited once.

> FIG. 2 sketches a uniform distribution of the stitching through points **7** over the area of the foil **6**, *__which may make it easier__ to stitch the hairs 4 according to FIG. 1 through the foil 6 by means of a machine* . . . .

'500 Patent at 5:51-54 (emphasis added). In other words, the specification explains that machine stitching is more easily performed when the stitching points are in a uniform two-dimensional distribution, as illustrated by Figure 2, as opposed to a non-uniform two-dimensional distribution of stitching points, as shown in Figure 1. Merely stating that stitching by machine may be made easier is not the same as stating that stitching *may only be performed* by a machine. The specification thus provides no basis to limit the plain meaning of this term.

The Court finds nothing in the intrinsic record to support Defendant's narrower construction, and further finds that the term can be understood on its face consistent with its plain meaning. No construction is necessary for the term "stitched" / "stitching."

*h)  "perpendicular"/"generally perpendicular" (Claims 1, 18)*

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| no construction necessary | "at an angle of 90° to a given line, plane, or surface or to the ground" |

The terms "perpendicular" and "generally perpendicular" appear within Claims 1 and 18. The relevant limitation of Claim 18, for instance, states:

> several hairs having ends fixed to the carrier structure, and extending straight
> through from the carrier structure in a main direction running
> ***perpendicular*** to the direction of main extension of the carrier structure;
> wherein the ends of the hairs are individually stitched through the foil forming the
> outer layer of the carrier structure, the hairs individually stitched through
> in a two-dimensional distribution of stitching through points and are fixed
> to the carrier structure by a glue-bond to the back side of the foil only, the
> fixed ends of the hairs, at the back side of the foil, running straight through
> in the main direction of the hairs from the glue-bond of their ends through
> the foil to the main direction of the hairs ***generally perpendicular*** to the
> direction of the main extension of the carrier structure.

'500 Patent at Claim 1 (emphasis added); *see also id.* at 18.

Plaintiffs argue that both terms would be understood by a PHOSITA when read "in the context of the claims and the intrinsic evidence." Docket No. 125 at 25. Defendant counters that "perpendicular" is understood to mean two elements that are exactly 90 degrees to each other, and because a PHOSITA cannot "determine the boundaries of 'generally perpendicular', both terms 'perpendicular' and 'generally perpendicular' should be interpreted as 'perpendicular', i.e. at an angle of exactly 90 degrees." Docket No.129 at 19. In other words, Defendant's construction would effectively eliminate the term "generally" from the claim term "generally perpendicular."

As previously noted, as a general rule, a claim construction that gives meaning to all the words of a claim is preferred. *See Merck & Co.,* 395 F.3d at 1372. In *Merck*, the Federal Circuit reversed the district court's claim construction where the district court had eliminated the term "about" in a claim construction with respect to a unit dose of "about 35 [or 70] mg." The Federal Circuit observed that the patent specification provided different exemplary ranges for the unit dose. *Id.* at 1371. After considering the record, the Federal Circuit held:

> [b]ecause the patentee did not clearly redefine "about" in the specification, and
> because the district court construed the claim term in a manner inconsistent with
> the specification, we reverse the district court's claim construction. We thus hold
> that the term "about" should be given its ordinary and accepted meaning of
> "approximately."

*Id.* at 1372. *See also Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1370 (Fed. Cir. 2018) (reversing the district court's claim construction which would render meaningless the distinction between "launch" and "display"); *In re Power Integrations, Inc.,* 884 F.3d 1370, 1376 (Fed. Cir. 2018) (reversing the district court's claim construction which would

render the claim language meaningless).

Similar to the district court's construction in *Merck*, here, the term "generally" would have no meaning under Defendant's proposed construction.  Further, Defendant's construction is inconsistent with the intrinsic evidence.  Both the specification and figures detail the difference between "perpendicular" and "generally perpendicular."  For instance, Figure 1 illustrates "[s]everal hairs **4** extend[ing] from the carrier structure **2** in a main direction **5** running perpendicular to the direction **3** of main extension.**"**  *See* '500 Patent at 5:38-40; *see also id.* at 3:10-17; 5:32-37.



'500 Patent at Figure 1.

Figure 3 shows a hair that is "generally perpendicular" as opposed to the "perpendicular" hairs shown in Figure 1.



'500 Patent at Figure 3.  As depicted, the hair **4** follows the main direction **5**, but the hair **4** has an "s" shaped curve due to the stitching through the foil **6**.  *Id* at Figure 3; 5:57-61.  Figure 3 does not depict the hair **4** as perfectly perpendicular, but the hair **4** is still generally perpendicular to the direction **3** of main extension (depicted in Figure 3 by the wavy vertical line on the left).  Thus, construing the terms "perpendicular" and "generally perpendicular" to have the same

scope would be improper in view of patent itself.

Defendant also argues that "'perpendicular' should be construed strictly to mean 'at an angle of exactly 90 degrees.'  Any deviation from 90 degrees, regardless of how slight, would be merely 'generally perpendicular.'"  Docket No. 129 at 20.  However, contrary to the construction Defendant seeks, the specification and the claims support the notion that perpendicular is used to establish a direction, not to match an exact angle.  The specification emphasizes that requiring exact degrees is not required, stating, "the main direction needs, *of course*, not be kept exactly." '500 Patent at 4:6-13 (emphasis added).  Further, the claims do not require the hairs themselves to be perpendicular, just that the hairs extend in a "main direction" running perpendicular to the direction of the main extension of the carrier, stating,

> several hairs having ends fixed to the carrier structure, and ***extending straight through from the carrier structure*** <u>***in a main direction running perpendicular***</u> ***to the direction of main extension*** of the carrier structure.

*Id.* at Claims 1, 18 (emphasis added).  The disclosure in the patent specification supports the conclusion that the terms "perpendicular" and "generally perpendicular" have different meanings, but even as to "perpendicular," the intrinsic record does not support a perfectly exact and rigid 90-degree angle.

Indeed, simply considering the dispute from a common-sense perspective, Defendant's proposed construction would create absurd results contrary to the teachings of the specification.  Hairs are not rigid components that maintain their position at all times.  Requiring hairs to be exactly 90 degrees perpendicular to the carrier structure would mean that only straight hair pulled taut would meet the limitation, while curly hairs or loose flowing hairs would not.  The Court finds Defendant's arguments seeking to confine the claims to exact degrees unpersuasive.

Finally, Defendant appears to be hinting at an indefiniteness argument.  Defendant argues, "[w]hen asked whether 'close' meant eighty-nine degrees or eighty-eight degrees, Plaintiffs' expert found it to be 'an unanswerable question,' noting that 'generally perpendicular' is a 'subjective term.'  There's no objective number to it."  Docket No. 129 at 19.  Defendant has not adequately raised the issue of indefiniteness at this stage, and thus the Court will not address it.  However, to the extent Defendant may attempt to argue that it has adequately raised an indefiniteness challenge, its argument would still fail.  Like any invalidity defense, indefiniteness must be proven by clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. Partnership*, 131

S. Ct. 2238, 2241 (2011).  Defendant has not provided such evidence here.  Indeed, Defendant does not argue that it cannot understand the claim term or that it is unable to propose a construction for it.  Defendant instead simply attempts to narrow the claim scope.  On the current record, Defendant has provided insufficient evidence to rebut the teachings in the specification as to the meaning of the term "perpendicular" and "generally perpendicular," and insufficient basis to show that these terms are indefinite.

After considering the parties' arguments, the Court finds no construction is necessary for the terms "perpendicular" / "generally perpendicular."

### C.  Parties' Cross Motions to Exclude Evidence/Testimony Related to Claim Construction Disputes

Each party has submitted a motion requesting that certain evidence submitted by the other party to support its claim construction positions be stricken and excluded.  Plaintiffs request that the Court exclude three website urls/links, twelve patent documents, and the declaration and testimony of Christopher Webb.  Docket No. 127.  Plaintiffs argue that the urls and patent documents have not been authenticated and that the Webb declaration is unreliable.  Defendant, meanwhile, requests that the Court exclude the opinions and testimony of David Stuart Brookstein for all purposes and inventor Alex for purposes of claim construction.  Docket No. 130.  Although Defendant requests that Brookstein be excluded from testifying "for all purposes," the substance of the motion itself is based on Brookstein's claim construction positions.  Defendant seeks to exclude declaration statements from Alex solely on the basis that it is inconsistent with his deposition testimony.

After considering the intrinsic patent record, the Court would resolve the parties' claim construction disputes without reference to any of the evidence challenged by the parties in their cross-motions to exclude.  Accordingly, the parties' motions to exclude would be **DENIED AS MOOT**.  To the extent the parties intend to rely on the same experts for other aspects of their dispute at later points in this matter, challenges to whether those experts are qualified to be expert witnesses will be addressed if/when a dispute about an expert's additional testimony becomes relevant to an issue at hand.

### CONCLUSION

For the reasons stated, the Court would adopt the following constructions for the disputed claim terms:

| Term | Court's Construction |
|---|---|
| "the hairs individually stitched through" (Claims 1, 18) | "each hair stitched through an individual stitch through point" |
| "several hairs" (Claims 1, 18) | "multiple hairs" |
| "the hairs . . . are fixed to the carrier structure by a glue bond to the back side of the foil only" (Claims 1, 18) | "each hair . . . is fixed to the carrier structure by a glue bond to the back side of the foil only" |
| "straight" (Claims 1, 18) | no construction necessary |
| "two-dimensional distribution" (Claims 1, 10, 18) | no construction necessary |
| "through" (Claims 1, 10, 18) | no construction necessary |
| "anti-hygroscopically sealed" (Claim 8) | "sealed from moisture" |
| "a hair band/ the hair band" (Claims 1-18) | no construction necessary |
| "stitched/stitching" (Claims 1, 10, 18) | no construction necessary |
| "perpendicular"/ "generally perpendicular" (Claims 1, 18) | no construction necessary |