Douglas H. Morseburg (SBN 126205)
dmorseburg@leechtishman.com
Esther J. Choe (SBN 321667)
echoe@leechtishman.com
**LEECH TISHMAN FUSCALDO & LAMPL**
200 S. Los Robles Ave., Ste. 210
Pasadena, California  91101
Telephone:  (626) 796-4000
Facsimile:   (626) 795-6321

Attorneys for Defendant and Counterclaimant
Hair Art Int'l, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| INTERNATIONAL DESIGNS CORP., etc., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HAIR ART INT'L, INC., etc.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 2:17-c v-8411-GW-PJW<br>Hon. George H. Wu<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF HAIR ART INT'L, INC. FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  02/21/2019<br>Time:        8:30 a.m.<br>Place:       Courtroom 9D<br>             350 W. 1st Street<br>             Los Angeles, CA<br><br>Complaint Filed: 11/17/2017<br>Pre-Trial Conf.:  05/16/2019<br>Trial:          05/28/2019 |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................1

    A. The Parties .................................................................................................1

    B. The '500 Patent .........................................................................................2

III. APPLICABLE LEGAL STANDARDS ..............................................................4

    A. Summary Judgment ...................................................................................4

    B. Infringement ..............................................................................................5

IV. HAIR ART IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT ....................................................................................7

    A. Claim 1 ......................................................................................................7

    B. Construction of Claim 1 ............................................................................8

    C. A Comparison of Claim 1 to Hair Art's Accused Products .................9

        1. Literal Infringement ........................................................................9

        2. Infringement Under the Doctrine of Equivalents ....................11

            a) The Doctrine of Equivalents Generally ..........................11

            b) The Plaintiffs' Likely Equivalence Argument ...............14

            c) Plaintiffs' Theory of Equivalence Violates the All Elements Rule ..............................................................15

            d) Plaintiffs' Equivalence Theory Violates the Specific Exclusion Principle. ..........................................16

            e) Plaintiffs Cannot Use the DOE to Capture a Hair Band Having Multiple Hairs Stitched Through the Carrier Because the Specification Excludes Prior Art Hair Bands Having That Structure. .......................................................................17

            f) There Is No Evidence That Hair Art's Toppers Have Only 1, 2, 3 or 4 Hairs Stitched Through the Carrier. .......................................................................20

    D. Claims 2-17 and Claim 18 ......................................................................21

    E. Inducing Infringement .............................................................................21

V. CONCLUSION ..................................................................................................22

1

## **TABLE OF AUTHORITIES**

2

3

### **Cases**

4
*Addisu v. Fred Meyer, Inc.*,
    198 F.3d 1130 (9th Cir. 2000) .............................................................. 5

5

*Akzo Nobel Coatings, Inc. v. Dow Chemical Company*,
6    811 F.3d 1334 (Fed. Cir. 2016) ........................................ 6, 10, 12, 13

7
*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................. 5

8

*Astrazeneca AB v. Mut. Pharm. Co.*,
9    384 F.3d 1333 (Fed. Cir. 2004) ................................................... 13, 18

10
*Asyst Technologies, Inc. v. Emtrak, Inc.*,
    402 F.3d 1188 (Fed. Cir. 2005) ................................................... 13, 16

11

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
12    73 F.3d 1573 (Fed. Cir. 1996) ..................................................... 12, 14

13
*Bayer AG v. Elan Pharma. Res. Corp.*,
    212 F.3d 1241 (Fed. Cir. 2000) ..................................................... 6, 13

14

*Brilliant Instruments, Inc. v. GuideTech, LLC*,
15    707 F.3d 1342 (Fed. Cir. 2015) .......................................................... 15

16
*CCS Fitness, Inc. v. Brunswick Corp.*,
    288 F.3d 1359 (Fed. Cir. 2002) ....................................................... 6, 9

17

*Celotex Corp. v. Catrett*,
18    477 U.S. 317 (1986) ......................................................................... 4, 5

19
*Dawn Equipment Co. v. Kentucky Farms Inc.*,
    140 F.3d 1009 (Fed. Cir. 1998) ................................................... 17, 18

20

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
21    535 U.S. 722 (2002) .......................................................................... 12

22
*Gaus v. Conair Corp.*,
    363 F.3d 1284 (Fed. Cir. 2004) ......................................................... 18

23

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
24    339 U.S. 605 (1950) .................................................................... 11, 12

25
*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*,
    62 F.3d 1512 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17
26    (1997)................................................................................................ 11, 12

27
*House v. Bell*,
    547 U.S. 518 (2006) ............................................................................ 5

28

*In re Skvorecz,*
    580 F.3d 1262 (Fed. Cir. 2009) ................................................................ 9

*J & M Corp. v. Harley–Davidson, Inc.,*
    269 F.3d 1360 (Fed. Cir. 2001) ...................................................... 18, 19, 20

*Johnson & Johnston Assoc., Inc. v. R.E. Service Co.,*
    285 F.3d 1046 (Fed. Cir. 2002) .............................................................. 13

*Laitram Corp. v. Rexnord, Inc.,*
    939 F.2d 1533 (Fed. Cir. 1991) ........................................................... 6, 10

*L.B. Plastics, Inc. Amerimax Home Products, Inc.*
    499 F.3d 1303, 1310 (Fed. Cir. 2007); *Astrazeneca AB,* 384
    F.3d at 1340, 1342 ...................................................................... 18, 20

*Limelight Networks, Inc. v. Akamai Technologies, Inc.,*
    572 U.S. 915 (2014) ............................................................................ 21

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995) .......................................................... 5, 6, 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ............................................................................. 5

*Moore USA Inc. v. Standard Register Co.,*
    229 F.3d 1091 (Fed. Cir. 2000) ............................................................ 12, 16

*Novartis Corp. v. Ben Venue Labs., Inc.,*
    271 F.3d 1043 (Fed. Cir. 2001) ............................................................. 7

*Optivus Technology, Inc. v. Ion Beam Applications, S.A.,*
    Case No. 03-cv-2053 SJO, 2004 WL 5700631 (C.D. Cal. Aug. 31,
    2004) ................................................................................................ 9

*Planet Bingo, LLC v. Game Tech Intern., Inc.,*
    472 F.3d 1338 (Fed. Cir. 2006) .............................................................. 13

*ResQNet.com, Inc. v. Lansa, Inc.,*
    346 F.3d 1374 (Fed. Cir. 2003) ............................................................. 9

*Sage Prods. v. Devon Indus., Inc.,*
    126 F.3d 1420 (Fed. Cir. 1997) ...................................................... 6, 11, 17

*Schwing GmbH v. Putzmeister Aktiengesellschaft,*
    305 F.3d 1318 (Fed. Cir. 2002) .............................................................. 18

*SciMed Life Sys. v. Advanced Cardiovascular Sys.,*
    242 F.3d 1337 (Fed. Cir. 2001) ........................................................... 14, 18

*TechSearch L.L.C. v. Intel Corp.,*
    286 F.3d 1360 (Fed. Cir.), *cert. denied,* 537 U.S. 995 (2002) ........................ 10

*Texas Instruments Inc. v. Cypress Semiconductor Corp.,*
    90 F.3d 1558, 1566 (Fed.Cir.1996) ..................................................... 11, 12

*Texas Instruments, Inc. v. United States Int'l Trade Comm'n*,
    805 F.2d 1558 (Fed. Cir. 1986) .......................................................... 11

*Wahpeton Canvas Co. v. Frontier, Inc.*,
    870 F.2d 1546 (Fed. Cir 1989) .......................................................... 21

*Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*,
    520 U.S. 17 (1997) ................................................................ 11, 13

### Statutory Authorities

15 U.S.C. §§ 1-4 ...................................................................................... 1

35 U.S.C. § 271(a) ............................................................................... 5, 6

### Rules and Regulations

Fed. R. Civ. Proc. 56(a) .......................................................................... 4

Fed. R. Evid. 201 ............................................................................... 9, 10

# I.   **INTRODUCTION**

Plaintiffs International Designs Corporation and Hairtalk GmbH (collectively, "Plaintiffs") have filed a one-count complaint against Hair Art Int'l, Inc. ("Hair Art") alleging that it is infringing U.S. Patent No. 8,434,500 (the "'500 Patent") directly and under the doctrine of equivalents. *See* DN 41 (First Amended Complaint) ("FAC"). Hair Art has counterclaimed against both Plaintiffs seeking a judicial declaration that it has not infringed the '500 Patent, that the '500 Patent is unenforceable and/or invalid and that Plaintiffs' claims are being asserted in bad faith. Hair Art has also brought claims against Gunter Alex, the named inventor on the '500 Patent. *See* DN 92 (First Amended Counterclaim) ("FACC").[1]

On October 4, 2018, the Court conducted a claim construction hearing. At the hearing, the Court circulated its tentative rulings regarding certain disputed claim terms, as well as its rulings on the parties' cross-motions to exclude certain extrinsic evidence (primarily expert declarations) submitted by the other in support of its claim construction position. Following the hearing, the Court entered an order adopting as "final" its tentative rulings on claim construction. *See* DN 161. In its order, the Court denied as moot the parties' cross-motions to exclude. Based upon the Court's claim construction ruling, Hair Art now seeks summary judgment of non-infringement.

# II.   **FACTUAL BACKGROUND**

## A.   **The Parties**

International Designs Corporation ("IDC") is a limited liability corporation organized under the laws of Florida. Uncontroverted Fact No. 1 (hereafter, "UF No.

---

[1] The FACC also contains a claim for anti-trust violations under the Sherman Act and the Clayton Act, 15 U.S.C. §§ 1-4. This claim has been dismissed.

1    ___.").  Hairtalk GmbH ("Hairtalk") is a limited liability company organized under

2 the laws of Germany.  UF No. 2.  Hairtalk claims that it owns the '500 Patent.  UF

3 No. 3.[2]  The '500 Patent issued on May 7, 2013 and is entitled "Hair Band."  UF No.

4 4.  IDC claims that it is the exclusive licensee of the '500 Patent.  UF No. 5.

5    Hair Art is a corporation organized under the laws of the State of California.

6 UF No. 6.  Hair Art and IDC are competitors in the market for a hair accessory

7 commonly referred to as a hair extension.  UF No. 7.  Hair Art imports, sells and

8 advertises a hair extension called the Topper.  UF No. 8.  Plaintiffs claim that the

9 Topper infringes all of the claims of the '500 Patent.  UF No. 9.

10

11    **B.**   **The '500 Patent**

12    As set forth in the Court's claim construction ruling, DN 161, the '500 Patent

13 generally, it relates to a "hair band which may be used for supplementing hair."  *See*

14 Exhibit 1 ('500 Patent), at col. 1, ll. 1-16.[3]  The hair band "may be part of a device

15 for supplementing hair, which is glued to the existing hair of the bearer, or it may

16 directly be such a complete device in that it is self-adhesive."  Exhibit 1, at col. 1 ll.

17 16-19.

18    The '500 Patent states that previous hair band designs were too thick and, in

19 appearance, did not correspond to the "natural appearance of the human scalp."  *Id.*

20 at col. 1 ll. 38-47 and col 1 ll. 58-61; *see generally id.,* at "Background of the

21 Invention."  The '500 Patent purports to solve the problems with the previous

22 designs by creating a thin, flat hair band manufactured at "acceptable efforts" and

23

24 ───────────────

   [2]   The '500 Patent identifies Arcos Die Haarprofis Handels GmbH as the

25 assignee.  This is the name by which Hairtalk was formerly known.

26    [3]   The '500 Patent has been referred to through the litigation as "Plaintiffs'

Exhibit 1."  A true and correct copy is attached to the accompanying Declaration of

27 Douglas H. Morseburg.

28

which "comes as close as possible to the naturally haired human scalp". *Id.,* at col. 2 ll. 58-61; *see also id.,* at col. 3 l. 66-col. 4 l. 5 (in the claimed hair band, "the individual hairs, . . . emerge out of the foil like the natural hairs out of the human scalp"); *id.,* at col. 6 ll. 14-17 (("[t]he optical appearance of the new hair band . . . nearly identically corresponds to the appearance of a naturally haired human scalp").

Figure 1, reproduced below, illustrates "a plane view of an embodiment of the new hair band" disclosed by the '500 Patent. Exhibit 1, at col. 3 ll. 48-50. The specification describes Figure 1 as depicting a strip-shaped carrier structure 2 which has a direction 3 of main extension. *Id.,* at col. 5 ll. 30-32. The outer layer of the carrier structure is formed by foil 6. *Id.,* at col. 5 ll. 40-42. Several "stitching through points" 7 are distributed over the area of the foil 6. *Id.,* at col. 5 ll. 42-46. Hairs 4 are stitched through the foil 6 in a main direction 5 which is perpendicular to the direction of main extension 3. *Id.,* at col. 5 ll. 38-43. The ends 8 of the hairs 4 (shown with dashed lines) protrude out the backside of foil 6 and are glued to the backside of the foil. *Id.,* at col. 5 ll. 46-48.



Fig. 1

Exhibit 1, at Figure 1.

Figure 3, reproduced on the next page, shows "a cross-section through a partial area of an embodiment of the new hair band." Exhibit 1, at col. 3 ll. 53-56. Figure 3 shows a single hair 4 stitched through foil 6 at stitching through point 7. *Id.,* at col. 5 ll. 57-61. Directly under the foil 6 is glue 9 which connects the end of the hair 8 to the back of the foil 6. *Id.,* at col. 5 ll. 62-65. The glue 9 is covered by a cover layer

10 in the form of a single layer of netting 11.  *Id.,* at col. 5 l. 65 – col. 6 l. 1.  A
continuous glue strip 12 is adhesive on both sides and is situated between the cover
layer 10 and removable cover layer 13.  *Id.,* at col. 6 ll. 1-4.



Exhibit 1, at Figure 3.

## III.    APPLICABLE LEGAL STANDARDS

### A.    Summary Judgment

The rules applicable to summary judgment motions are well-known.
Summary judgment is appropriate when the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of
law.  Fed. R. Civ. Proc. 56(a).  "A party asserting that a fact cannot be or is
genuinely disputed must support that assertion by . . . citing to particular parts of
materials in the record, including depositions, documents, electronically stored
information, affidavits, or declarations, stipulations . . . admissions, interrogatory
answers, or other materials," or by "showing that materials cited do not establish the
absence or presence of a genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact."  *Id.* 56(c)(1)(A), (B).  Thus, summary
judgment is mandated "against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's case, and on which that
party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317,
322 (1986).

On a motion for summary judgment, the moving party bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.,* at 323. The burden then shifts to the non-moving party to establish the existence of an issue of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

A "material fact" is one that is necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

On a motion for summary judgment, the court does not assess credibility or weigh the evidence. It simply determines whether there is a genuine factual issue for trial. *House v. Bell*, 547 U.S. 518, 559–60 (2006). In deciding the motion, the court credits the evidence of the non-movant and draws all justifiable inferences in his/her favor. *Id*., at 269. However, the non-moving party's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.,* at 247–48. Moreover, "[a] scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000).

## B.    Infringement

A party who "without authority makes, uses, offers to sell, or sells any patented invention" is liable for patent infringement under 35 U.S.C. § 271(a). A determination of patent infringement requires a two-step analysis. *Markman v.*

*Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  The first step is to construe the claims, i.e., to determine the scope and meaning of what is allegedly infringed.  *Id*.  This step is a question of law.  *Id*., at 970–71.  The second step is to compare the properly construed claims to the accused product to determine whether each of the claim limitations is met, either literally or under the doctrine of equivalents.  *Id*., at 976; *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1365 (Fed. Cir. 2002).

"Infringement, whether literal or under the doctrine of equivalents, is a question of fact.  As such, it is amenable to summary judgment when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." *Akzo Nobel Coatings, Inc. v. Dow Chemical Company,* 811 F.3d 1334, 1339 (Fed. Cir. 2016) (internal citations omitted); *see also Sage Prods. v. Devon Indus., Inc.,* 126 F.3d 1420, 1423 (Fed. Cir. 1997) ("Although equivalence is a factual matter normally reserved for a factfinder, the trial court should grant summary judgment in any case where no reasonable factfinder could find equivalence.").

On a patent infringement claim, the patentee bears the burden of proving by a preponderance of the evidence that each accused product contains each element of the asserted claims.  *Bayer AG v. Elan Pharma. Res. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).  The absence of one claim element establishes non-infringement as to that claim and makes immaterial whether there are any issues of fact as to infringement of any other elements.  *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

"Since the ultimate burden of proving infringement rests with the patentee," an accused infringer may establish that summary judgment is proper "either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the

patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

## IV.    HAIR ART IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT

The '500 Patent contains 18 claims.  *See* Exhibit 1, at col. 6 l. 38-col. 8 l. 30. Plaintiffs contend that Hair Art is infringing every claim.  Claims 2-17 depend from, and include all the limitations of, independent claim 1.  Claim 18 is an independent claim.  However, it includes the limitation that is pivotal to a resolution of this motion.  Because the analysis below applies equally to all the claims of the '500 Patent, the following analysis will focus on claim 1.

### A.    Claim 1

In its entirety, claim 1 reads as follows:

A hair band comprising:

a strip-shaped carrier structure having an elastic foil forming an outer layer of the hair carrier structure, a having a direction of main extension; and

several hairs having ends fixed to the carrier structure, and extending straight through from the carrier structure in a main direction running perpendicular to the direction of main extension of the carrier structure;

wherein the ends of **the hairs are individually stitched through** the foil forming the outer layer of the carrier structure, **the hairs individually stitched through** in a two-dimensional distribution of stitching through points and are fixed to the carrier structure by a glue-bond to the backside of the foil only,

the fixed ends of the hairs, at the back side of the foil, running
straight through in the main direction of the hairs from the glue-
bond of their ends through the foil in the main direction of the
hairs generally perpendicular to the direction of the main
extension of the carrier structure.

Exhibit 1, at col. 6 ll. 38-58 (emphasis added).  As set forth below, Hair Art's
accused products do not meet the **bolded limitations** of claim 1.

### B.    Construction of Claim 1

At the claim construction hearing on October 4, 2018, the parties disagreed
regarding the construction of the bolded claim term "the hairs [are] individually
stitched through [the foil]".  Hair Art contended that the term should be construed to
mean "each of the majority of the hairs of the hair band singly extends in one side of
the foil and out the other side of the foil at a separate stitching through point." *See*
DN 105-2 (Amended Joint Claim Construction Term Chart), at Page ID's 1811-
1813.  Plaintiffs, on the other hand, contended that the Court should construe the
larger term "wherein the ends of the hairs are individually stitched through the foil
forming the outer layer of the carrier structure" and that this phrase should be
construed to mean "one or more ends of hairs stitched through the carrier foil at
individual stitch-through points." *See id.,* at Page ID #'s 1811-1835.

In its claim construction ruling, the Court rejected Plaintiff's proposed
construction and found that there was "no way" to read the language of claim 1 to
mean that "multiple hairs" are stitched through individual stitch-through points in the
foil.  Thus, based upon the plain language of claim 1 and the '500 Patent
specification, the Court construed the term "the hairs are individually stitched
through" as "each hair stitched through an individual stitch through point."  DN 161,
at Page ID #'s 5365-5368.

**C.    A Comparison of Claim 1 to Hair Art's Accused Products**

The second step in an infringement analysis involves a comparison of the claims of the patent-in-suit to the accused products to determine whether each claim limitation is met, either literally or under the doctrine of equivalents. *Markman,* 52 F.3d at 976; *CCS Fitness,* 288 F.3d at 1365.

**1.    Literal Infringement**

In its claim construction ruling, the Court construed the term "the hairs are individually stitched through" as "each hair stitched through an individual stitch through point." DN 161, at Page ID #'s 5365-5368. The Federal Circuit recognizes that the term "each" means "every" or "all". *See In re Skvorecz,* 580 F.3d 1262, 1267 (Fed. Cir. 2009) ("The Board erred in holding that some wire legs of the [applicant's] device, as claimed, need not have an offset, when the claims state that each wire leg has an offset."); *ResQNet.com, Inc. v. Lansa, Inc.,* 346 F.3d 1374, 1379 (Fed. Cir. 2003) (trial court correctly construed language of claim covering algorithm for generating a "screen identification" from "each field" to require use of "all fields").[4] The Random House Dictionary of the English Language and the online reference source at www.dictionary.com likewise both define "each" as "every one of two or more considered individually or one by one". *See* Exhibits A and B to the accompanying Declaration of Douglas H. Morseburg.[5]

Thus, under the Court's construction of the term "the hairs are individually

---

[4]    *See also Optivus Technology, Inc. v. Ion Beam Applications, S.A.,* Case No. 03-cv-2053 SJO, 2004 WL 5700631, *11-12 (C.D. Cal. Aug. 31, 2004) ("each" means "every"; claim term "a gantry at each treatment center" means "a gantry at every treatment center").

[5]    Hair Art requests that the Court take judicial notice of these definitions pursuant to Evidence Code sections 201, subsections (b)(2) and (c)(2).

stitched through", claim 1 of the '500 Patent covers a hair band in which every hair is stitched through an individual stitch-through point.  If Hair Art's accused Topper product does not meet this limitation, there is no infringement.  *See, e.g., Akzo,* 811 F.3d at 1341 ("Literal infringement exists when every limitation in the claim is found in the accused device."); *TechSearch L.L.C. v. Intel Corp.,* 286 F.3d 1360, 1371 (Fed. Cir.) (an accused product literally infringes a patent claim when the product includes all elements of the claim), *cert. denied,* 537 U.S. 995 (2002).

Here, it is undisputed that the hairs in Hair Art's Topper products are not "each . . . stitched through an individual stitch through point", as the patent requires. Plaintiffs obviously agree because they allege in the FAC that, in Hair Art's Topper, "[t]he accused product extension hair or ends are stitched through the foil either as a single hair or as multiple hairs (1, 2, 3 or 4 hairs) at individual stitch-through points." DN 41, at Page ID # 631.  And even a cursory review of the photographs of Hair Art's Topper product that are attached to the FAC clearly show that almost every individual stitch-through point in Hair Art's accused products has more than one hair stitched into it.  *See* DN 41, Exhibit E, at Page ID #'s 658-62.  Moreover, the evidence submitted by Hair Art in support of the instant motion corroborates the fact that virtually every stitch-through point in Hair Art's accused Topper products has more than one hair stitched into it.  UF No. 18.  *See generally* Declaration of Nikhil Kar and Exhibit C thereto.

Accordingly, Hair Art's accused products do not meet the "each hair stitched through an individual stitch through point" limitation of claim 1.  UF No. 19.  As a matter of law, therefore, there is no literal infringement.  *See Laitram Corp.*, 939 at 1535 (the absence of one claim element establishes non-infringement as to that claim).  No reasonable juror could find otherwise.

### 2.    <u>Infringement Under the Doctrine of Equivalents</u>

Even if an accused product does not literally possess each limitation of a claim, it may still infringe if there is "equivalence" between the elements of the accused product and the claimed elements.  *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 40 (1997).  The burden of establishing equivalency is on the patentee on a limitation by limitation basis.  *Texas Instruments Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1566 (Fed.Cir.1996).

### a)    <u>The Doctrine of Equivalents Generally</u>

The doctrine of equivalents ("DOE") is a judicially created rule of law.  Its purpose is to prevent an infringer from stealing the benefits of an invention, *Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 805 F.2d 1558, 1572 (Fed. Cir. 1986), by changing only minor or insubstantial details of a claimed invention while retaining their essential functionality.  *See Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608 (1950); *Sage,* 126 F.3d at 1424.  Because application of the DOE conflicts with the primacy of the claims in determining claim scope, the Supreme Court has cautioned that the DOE is to be applied narrowly.  *See, e.g., Warner-Jenkinson,* 520 U.S. at 29 ("[T]he doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement.").

One test for determining equivalency is the "insubstantial differences" test, in which the infringement of a patent claim is found "if and only if, the differences between the claimed and accused products or processes are insubstantial."  *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.,* 62 F.3d 1512, 1517 (Fed. Cir. 1995) (en banc), *rev'd on other grounds,* 520 U.S. 17 (1997).  In determining what is an "insubstantial difference", courts apply a 3-way test known as the "function/way/result" test.

Under this test, infringement under the DOE may be found if the elements of the accused device perform substantially the same function, in substantially the same way, to attain substantially the same result as the corresponding limitations of the claimed invention. *Id.* at 1518; *Graver Tank,* 339 U.S. at 608. According to the Federal Circuit, "[t]he function-way-result test 'often suffice[s] to show the *substantiality* of the differences'" between the claimed and accused products. *Akzo,* 811 F.3d at 1343 (quoting *Texas Instruments,* 90 F.3d at 1566) (emphasis added). The Federal Circuit has also stated that not all claim limitations are entitled to an equal scope of equivalents and that "[u]ltimately, 'many limitations warrant little, if any, range of equivalents.'" *Akzo,* 811 F.3d at 1343 (quoting *Moore USA Inc. v. Standard Register Co.,* 229 F.3d 1091 (Fed. Cir. 2000)).

The DOE is subject to several important limitations. First, prosecution history estoppel, which arises when an applicant makes amendments or assertions in the prosecution of a patent application, may preclude the consideration of equivalents. The Supreme Court has held that PHE arises when "an amendment is made to secure the patent and the amendment narrows the patent's scope." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 736 (2002). In such instances, estoppel will preclude the patent holder from asserting equivalents to a fair interpretation of what was surrendered in the amendment which were foreseeable at the time of the amendment. *Id.,* at 738.

Second, the DOE is inapplicable where the asserted "equivalent" of what is literally claimed would encompass the prior art. Thus, the prior art as it existed at the time of the invention will preclude a patentee from extending the scope of a claim into the prior art, even though all such prior art was not necessarily made of record in the prosecution history. *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1582 (Fed. Cir. 1996) (the DOE "cannot be used to protect subject matter in, or obvious in light of, the prior art. . . .").

1    Third, the DOE cannot reach disclosed but unclaimed subject matter in the

2  patent. *Johnson & Johnston Assoc., Inc. v. R.E. Service Co.,* 285 F.3d 1046 (Fed.

3  Cir. 2002) (en banc).

4    Fourth, the DOE is limited by disavowals and disclaimers in the specification.

5  As an example, "where the general summary or description of the invention section

6  of a patent describes a feature of the invention . . . and criticizes other products . . .

7  that lack that same feature, this operates as a clear disavowal of these other products .

8  . ." and thereby bars application of the doctrine of equivalents. *See, e.g., Astrazeneca*

9  *AB v. Mut. Pharm. Co.,* 384 F.3d 1333, 1340 (Fed. Cir. 2004); *Bayer AG,* 212 F.3d at

10  1254 ("In this case, during prosecution, Bayer emphasized the inventive nature of its

11  claimed SSA range and the disadvantages of SSAs outside its claimed range.  Thus,

12  Bayer's statements, in total, amount to a 'clear and unmistakable surrender,' so that a

13  competitor would reasonably believe that Bayer had surrendered SSAs outside the

14  claimed range.") (internal citations omitted).

15    Fifth, the DOE cannot be used to vitiate or completely eliminate a claim or a

16  claim element from the patent-in-suit. *See, e.g., Warner-Jenkinson,* 520 U.S. at 39 n.

17  8 ("if a theory of equivalence would entirely vitiate a particular claim element,

18  partial or complete judgment should be rendered by the court. . . ."); *Akzo,* 811 F.3d

19  at 1342 ("Under the doctrine of equivalents, an infringement theory . . . fails if it

20  renders a claim limitation inconsequential or ineffective."); *Planet Bingo, LLC v.*

21  *Game Tech Intern., Inc.,* 472 F.3d 1338, 1344 (Fed. Cir. 2006) ("[T]he doctrine of

22  equivalents must not expand to eliminate a claim element entirely.").  The concept

23  that the DOE cannot be used to eliminate a claim or a claim element from the patent-

24  in-suit is known as the "all elements rule." *Asyst Technologies, Inc. v. Emtrak, Inc.,*

25  402 F.3d 1188, 1195 (Fed. Cir. 2005).

26    Finally, under a corollary to the "all elements rule", known as the "specific

27  exclusion principle", the DOE cannot be used to reach structure where that structure

28

1    is clearly excluded from the claims, either expressly or impliedly.  *See, e.g., Athletic*

2    *Alternatives,* 73 F.3d at 1582 (claim directed to a system for stringing tennis rackets

3    requiring at least three different splay-creating offset distances for the strings

4    specifically excluded system with only two offset distances); *SciMed Life Sys. v.*

5    *Advanced Cardiovascular Sys.,* 242 F.3d 1337, 1346 (Fed. Cir. 2001) (noting the

6    close kinship between the "all elements rule" and the "specific exclusion" principle).

7

8                    **b)       The Plaintiffs' Likely Equivalence Argument**

9            Based upon the allegations of the FAC (*see* DN 41, at Page #'s 630-31), Hair

10   Art anticipates that, in opposition to the instant motion, Plaintiffs will argue Hair Art

11   infringes under the DOE because Hair Art's accused Topper products have 1, 2, 3 or

12   4 hairs stitched through the individual stitch-through points in the carrier foil and that

13   having 1, 2, 3 or 4 hairs stitched through the individual stitch-through points is an

14   "equivalent" of having "each hair stitched through an individual stitch through

15   point."  This argument is meritless for at least four reasons.

16           First and second, application of the DOE in the manner urged by Plaintiffs

17   would (1) impermissibly eliminate the "each hair [is] individually stitched through an

18   individual stitch-through point" element from the '500 Patent in violation of the all

19   elements rule, and (2) include within the scope of the patent structure that is

20   necessarily excluded from claim 1 in violation of the specific exclusion principle.

21           Third, the specification of the '500 Patent criticizes hair bands having multiple

22   hairs (i.e., strands of hair) stitched through a carrier and, thus, disavows hair bands

23   having that structure.

24           Fourth, and finally, even if a hair band with 1, 2, 3, or 4 hairs through each

25   stitch-through point were equivalent to Plaintiffs' claimed hair band (and it is not),

26   Hair Art's accused Toppers do not meet the 1, 2, 3 or 4 hair DOE limitation urged by

27   Plaintiffs.  Hair Art will discuss each point in order.

28

1

2              **c)**      **Plaintiffs' Theory of Equivalence Violates the All**

3                    **Elements Rule.**

4       As noted above, under the all elements rule, the DOE cannot be used to vitiate

5 a claim or a claim element from the patent-in-suit.  As the Federal Circuit has

6 explained, "[S]aying that a claim element would be vitiated is akin to saying that

7 there is *no equivalent* to the claim element in the accused device".  *Brilliant*

8 *Instruments, Inc. v. GuideTech, LLC,* 707 F.3d 1342, 1347 (Fed. Cir. 2015).

9       Here, claim 1 plainly requires that each hair of the claimed hair band be

10 stitched through an individual stitch-through point.  According to the specification,

11 "[t]he optical appearance" of a hair band having this structure "nearly identically

12 corresponds to the appearance of a naturally haired human scalp".  Exhibit 1, at col.

13 6 ll. 14-17; *see also id.,* at col. 2 ll. 58-61 (claimed hair band "comes as close as

14 possible to the naturally haired human scalp"; *id.,* at col. 3 l. 66-col. 4 l. 5 (in the

15 claimed hair band, "the individual hairs, . . . emerge out of the foil like the natural

16 hairs out of the human scalp").

17       Hair Art's accused Topper products have multiple hairs (i.e., strands of hair)

18 stitched through a carrier of the band.  According to the specification of the '500

19 Patent, "[t]he external optical appearance" of a hair band with this structure "does

20 not correspond to the natural appearance of the human scalp".  Exhibit 1, at col. 1: ll.

21 25-31 and co. 1 ll. 43-46.

22       Thus, Plaintiffs' claimed device (i) uses single hairs stitched through

23 individual points in a carrier (way), (ii) to create a hair band (function), (iii) having

24 an appearance "nearly identically" corresponding "to the appearance of a naturally

25 haired human scalp" (result).  By contrast, Hair Art's accused devices (i) use

26 multiple strands of hair stitched through individual points in a carrier (way), (ii) to

27 create a hair band (function) (iii) having an "external optical appearance" that "does

28

1    not does not correspond to the natural appearance of the human scalp" (result).

2        In sum, Hair Art's accused products do not meet the function-way-result test

3    of infringement under the DOE because they achieve a different result in a different

4    way.  Moreover, any finding that a structure in which "*up to four hairs* [are] stitched

5    through an individual stitch-through point" is an "equivalent" of a structure in which

6    "each hair [is] stitched through an individual stitch through point" would effectively

7    read the "each hair stitched through an individual stitch-through point" requirement

8    right out of the patent.  For this reason alone, Plaintiffs' theory of infringement under

9    the DOE fails.

10

11        d)    **Plaintiffs' Equivalence Theory Violates the Specific**

12            **Exclusion Principle.**

13        As set forth above, the "specific exclusion principle" prohibits use of the DOE

14    to include structure that is clearly excluded from the claims of a patent, either

15    expressly or impliedly.  Numerous courts have applied the principle.  For example, in

16    *Moore,* cited above, the Federal Circuit considered a claim to a mailer-type business

17    form in which longitudinal strips of adhesive extended "the majority of the lengths"

18    of the longitudinal margins of the form.  Where the longitudinal strips of the accused

19    form extended a minority of the length of the longitudinal margin, the court refused

20    to find infringement under the DOE holding that "it would defy logic to conclude

21    that a minority – the very antithesis of a majority – could be *insubstantially* different

22    from a claim limitation requiring a majority, and no reasonable juror could find

23    otherwise."  229 F.3d at 1106 (emphasis added).

24        Similarly, in *Asyst Technologies, Inc. v. Emtrak, Inc.,* 402 F.3d 1188, 1195

25    (Fed. Cir. 2005), the Federal Circuit upheld a district court's conclusion that an

26    "unmounted" computer did not infringe under the DOE where the claim at issue

27    required a "mounted" computer.

28

Finally, in *Sage,* the Federal Circuit affirmed the district court's refusal to find infringement under the DOE where the accused device (a syringe disposal container) had an elongated slot below the top, rather than at the top, as required by the claim. 126 F.3d at 1425-26.  In reaching its decision, the court specifically warned of the dangers of permitting a patentee to file and prosecute narrow claims and then, during the course of litigation, to seek an expansion of its exclusive rights under the DOE, thereby avoiding examination of broader claims.  *Id.,* at 1426.

Here, claim 1 requires that only one hair be stitched through an individual stitch-through point.  As a matter of logic, this claim element *necessarily* excludes devices having "one or more hairs" or "up to four hairs" stitched through each stitch-through point and no reasonable juror could find otherwise.  For this additional reason, Plaintiffs' theory of infringement under the DOE fails.

> **e)    Plaintiffs Cannot Use the DOE to Capture a Hair Band Having Multiple Hairs Stitched Through the Carrier Because the Specification Excludes Prior Art Hair Bands Having That Structure.**

The third reason Plaintiffs cannot succeed under the DOE is that the specification of the '500 Patent makes clear that prior art hair bands in which multiple hairs (i.e., strands of hair) are stitched through a foil are not within the scope of the '500 Patent.

The Federal Circuit has held that when a specification criticizes certain prior art alternatives and excludes those prior art alternatives from the literal scope of the claims, the patentee cannot then use the DOE to capture those alternatives.  For example, in *Dawn Equipment Co. v. Kentucky Farms Inc.,* 140 F.3d 1009 (Fed. Cir. 1998), the Court described as "damning evidence" the fact that the specification of the patent-in-suit noted the disadvantages of prior art "multi-hole pinned height

adjustment mechanisms" in devices for adjusting the height of farm implements and described the mechanism provided by the patented invention as solving the problems associated with the prior mechanism. *Id.*, at 1016. The Court concluded that the patentee could not resort to the DOE to establish infringement, when the accused device used the same mechanism as the criticized prior art devices. *Id.*, at 1016–17.

Likewise, in *SciMed Life Sys.,* cited above, the Court concluded that because the common specification of the patents-in-suit "referred to prior art catheters, identified them as using [the same configuration used by the accused device], and criticized them as suffering from [several] disadvantages," the DOE was unavailable to recapture them. 242 F.3d at 1345. "Having specifically identified, criticized, and disclaimed the dual lumen configuration, the patentee cannot now invoke the doctrine of equivalents to embrace a structure that was specifically excluded from the claims." *Id.* (internal quotation marks omitted).

The rule that a patentee cannot use the DOE to capture prior art that it has specifically identified in a specification, criticized and then failed to claim is a bedrock principle of patent law and it has been applied in numerous other cases. *See, e.g., L.B. Plastics, Inc. Amerimax Home Products, Inc.,* 499 F.3d 1303, 1310 (Fed. Cir. 2007); *Astrazeneca AB,* 384 F.3d at 1340, 1342; *Gaus v. Conair Corp.,* 363 F.3d 1284, 1291 (Fed. Cir. 2004); *Schwing GmbH v. Putzmeister Aktiengesellschaft,* 305 F.3d 1318, 1329 (Fed. Cir. 2002); *J & M Corp. v. Harley–Davidson, Inc.,* 269 F.3d 1360, 1369 (Fed. Cir. 2001).

The rule of the above cases applies here as well. In the "Background of the Invention" section of the '500 Patent, the patent applicant (Plaintiff Hairtalk) describes European Patent Application Publication EP 1 642 510 A1 as teaching a hair band in which multiple hairs are knotted together in strands, the knots of the hair band are located on the back side of an elastic foil and the hairs of the strands extend out the front side. According to the specification, one of the problems with this prior

art device is that "[t]he external optical appearance of the hair band does not correspond to the natural appearance of the human scalp *due to the hair emerging out of the foil in strands.*" Exhibit 1, at col. 1: ll. 25-31 and col. 1 ll. 43-46 (emphasis added). The '500 Patent thus specifically identifies and criticizes the use of strands of hair in the making of hair bands in the prior art.

At the time the '500 Patent was being prosecuted, Hairtalk was aware of the possibility of making hair bands by stitching multiple hairs, i.e., strands, through the foil at separate stitch-through points. However, it dismissed this approach and instead expressly described and claimed a hair band in which the hairs are individually stitched through the foil. *See, e.g.,* Exhibit 1, at Abstract ("[t]he ends . . . of single hairs are stitched through the elastic foil"); *id.,* Summary of the Invention, at col. 3 ll. 4-5 and col. 3 ll. 17-18 ("[t]he ends of the hairs are individually stitched through the foil"); *id.,* Detailed Description, at col. 3 ll. 60-61 ("the ends of individual hairs are stitched through the elastic foil"), col. 3 l. 66-col. 4 l. 1 ("the individual hairs, which are stitched through this foil, emerge out of the foil like natural hairs out of a human scalp"); Figures 1 and 3, (each showing single hairs emerging from the foil); and claim 1, col. 6 ll. 47-48 ("the hairs are individually stitched through the foil" and col. 6 ll. 49-50 ("the hairs [are] individually stitched through [the foil]"). In doing so, Hairtalk touted the "optical appearance" of "the new hair band" as "nearly identically correspond[ing] to the appearance of a naturally haired human scalp." Exhibit 1, at 6:14-17.

The only conclusion a reasonable juror could reach from this undisputed intrinsic evidence is that Hairtalk made a conscious decision to limit its claim to individual hairs stitched through the foil and to not claim multiple hairs (i.e., strands) stitched through the foil because individual hairs look "natural" and strands of hair do not. Plaintiffs cannot now overlook that deliberate decision and seek to reclaim the use of multiple hairs, i.e., strands, through the doctrine of equivalents. *See J &*

*M,* 269 F.3d 1360 at 1368-69 (holding that a structure described in the specification as a flaw in the prior art could not infringe under the doctrine of equivalents).

Since the patentee elected to distinguish prior art devices that utilized multiple hairs stitched through the carrier and to limit its claim to single hairs stitched through the individual stitch-through points, a person of ordinary skill in the field of the '500 Patent reading the specification would clearly understand that the inventor thought hair bands having multiple hairs stitched through individual stitch-through points were undesirable and that hair bands having individual hairs stitched through the stitch-through points were desirable. Under the circumstances, having disavowed hair bands with multiple hairs, Plaintiffs cannot now use the DOE to include hair bands with multiple hairs stitched through each stitch-through point within the scope of claim 1. *See L.B. Plastics,* 499 F.3d at 1309-10.

### f)    There Is No Evidence That Hair Art's Toppers Have Only 1, 2, 3 or 4 Hairs Stitched Through the Carrier.

The fourth reason Plaintiffs cannot succeed on their DOE claim is that Hair Art's accused Toppers do not meet the limitations of Plaintiffs' proposed equivalent claim term (i.e., up to 4 hairs stitched through the stitch-through points in the carrier). It is apparent from the photographs attached to the FAC that Hair Art's accused devices have more than one hair stitched through almost every stitch-through point in the carrier. But the photographs are of such poor quality that it is impossible to determine whether Hair Art's products contain *only* 1, 2, 3 or 4 hairs.

The accompanying evidence submitted by Hair Art concurrently with this motion show that Hair Art's accused Topper devices have anywhere from two to six hairs stitched through virtually every stitch-through point in the carrier structure. *See generally* Kar Declaration and Exhibit C thereto. Inasmuch as Hair Art's accused devices do not meet the limitations of Plaintiffs' equivalent structure, Plaintiffs'

claim for infringement under the DOE fails as a matter of law.

### D.    Claims 2-17 and Claim 18

Claims 2-17 of the '500 Patent depend from claim 1.  Since there is no infringement of independent claim 1, there can be no infringement of dependent claims 2-17.  *Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1553 (Fed. Cir 1989).

Claim 18 is an independent claim.  The hair band of claim 18 has the same "each hair [is] stitched through an individual stitch-through point" limitation that is in claim 1.  For the same reason there is no infringement of independent claim 1, there is no infringement of independent claim 18.

### E.    Inducing Infringement

Plaintiffs contend that Hair Art is inducing infringement of the '500 Patent by advertising its Topper products to hair stylists and teaching them how to use the product.  DN 41, at Page ID # 633.  However, since Hair Art's accused products do not infringe the '500 Patent, Hair Art cannot be liable for inducing infringement.  *See Limelight Networks, Inc. v. Akamai Technologies, Inc.,* 572 U.S. 915, 920-21 (2014) (inducement liability may arise only if there is direct infringement).

//

//

## V.    **CONCLUSION**

For the foregoing reasons, there is no triable issue of fact regarding Hair Art's alleged infringement of the '500 Patent either literally or under the doctrine of equivalents.  Therefore, the Court should enter summary judgment in favor of Hair Art on Plaintiffs' claim.

Respectfully submitted,

Dated:  January 18, 2019                    LEECH TISHMAN FUSCALDO & LAMPL

By:   */s/Douglas H. Morseburg*
                    Douglas H. Morseburg

Attorneys for Defendant and Counterclaimant Hair Art Int'l, Inc.